# William Wesley ALDEN, M.D.

### v.

# ALLIED ADULT & CHILD CLINIC, L.L.C., et al.

## No. CIV. A. 01–371.

United States District Court, E.D. Louisiana.

Oct. 18, 2001.

---

Gregory Patrick Nichols, Law Office of Gregory P. Nichols, New Orleans, LA, for plaintiff.

Matthew Kepner Brown, Locke Liddell & Sapp, LLP, New Orleans, LA, for defendants.

BARBIER, District Judge.

Before the Court is a **Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec.Doc. 5)** filed by Defendants, Allied Adult and Child Clinic, L.L.C. and Gulf Coast Medical Consultants, L.L.C. Plaintiff opposes the motion. The motion, set for hearing on August 15, 2001, is before the Court on briefs without oral argument. Having considered the briefs, the various memoranda, and the applicable law, the Court concludes, for the reasons that follow, that the Complaint herein fails to state a claim, but that Plaintiff be allowed fifteen (15) days in which to amend the original Complaint (Rec.Doc. 1) and Case Statement of Civil RICO Claim (Rec. Doc. 4).

### Background

Plaintiff, Dr. William Wesley Alden, accepted a position as a staff physician with Allied Adult and Child Clinic, L.L.C. ("Allied") at their Canal Street Clinic in August 1999. According to Plaintiff, a majority of Allied's patients are referred to Allied by personal injury plaintiffs' lawyers. Plaintiff claims that during January and February of 2000, he discharged several such patients, who stated that they no longer suffered from any musculoskeletal pain or immobility, for which Dr. Alden had been treating them.

Plaintiff alleges that following his discharge of these patients, several different attorneys who had made the referrals and whose clients had been treated by him, called Allied and complained that their clients had been discharged too soon. Dr. Alden further states that these attorneys expressed to Allied their desire for their clients to continue receiving treatment, regardless of their medical condition, in or-

der to inflate the value of the patients' personal injury claims. According to Dr. Alden, those same attorneys stated that they would cease to refer clients to Allied if Dr. Alden remained as their clients' treating physician.

Defendant, Dr. Barry L. Bordonaro, who served as the medical director of Allied, allegedly directed other Allied employees to bring these concerns to Dr. Alden's attention. Dr. Alden claims that when he responded that he would not treat patients who no longer required treatment, Dr. Bordonaro informed him that Allied was immediately ending its association with him.

Following his release from Allied, Dr. Alden was offered a position at Gulf Coast Medical Consultations, L.L.C., of which Defendants Drs. Phillip A. Jones and Francis G. Daly served as the medical directors. Plaintiff claims that the offer was revoked after Allied contacted Gulf Coast regarding their dispute with Dr. Alden. Plaintiff alleges that Gulf Coast engaged in the same practice as Allied of treating patients referred by certain attorneys who no longer required medical attention.

Dr. Alden filed the instant suit, alleging in his Complaint that Defendants' practice of billing patients and/or insurance companies for medically unnecessary treatment violates RICO, that Dr. Alden was fraudulently induced by Dr. Bordonaro to work with Allied in furtherance of Allied's unlawful billing practices, that he was wrongfully terminated by Allied in violation of Louisiana law, that Gulf Coast unlawfully revoked the offer of employment under Louisiana law, and that his wrongful termination and Gulf Coast's revocation were overt acts by the defendants in furtherance of their RICO conspiracy. Dr. Alden additionally claims that for a year following his termination from Allied he had difficulty finding comparable work and re-

ceived less compensation than he would have had he not been fraudulently induced to associate with Allied. He further asserts that his personal and professional reputation have been damaged and that the defendants' conduct caused him severe emotional and psychological distress.

Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. 5), arguing that (1) Plaintiff did not plead his claim in accordance with this Court's RICO Standing Order; and (2) Plaintiff's claim is for wrongful termination and is not actionable under RICO.

## A. Subject Matter Jurisdiction

Plaintiff first responds to Defendants' motion by noting that the motion confuses the distinct issues of whether the Court lacks subject matter jurisdiction with whether the complaint states a viable cause of action under RICO. Plaintiff argues that Defendants' motion clearly takes issue with the sufficiency of the complaint's allegations, and that if the Court has the authority to determine the sufficiency of the RICO claims in the complaint, then the Court possesses subject matter jurisdiction over the case.

Plaintiff is correct that whether the Court lacks subject matter jurisdiction and whether Plaintiff has failed to state a claim on which relief can be granted are distinct questions. *Employers Ins. Of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 759 (5th Cir.1989). Jurisdiction is not defeated by the possibility that the plaintiff's allegations might fail to state a viable cause of action on which the plaintiff could recover. *Id.* (citing *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773,90 L.Ed. 939 (1946)). Where the plaintiff has clearly attempted to state a federally-based cause of action and the allegations are not "clearly concocted for the sole purpose of obtaining federal jurisdiction"

or "wholly insubstantial and frivolous," the Court has subject matter jurisdiction over the claims, even if it later dismisses the claims for failure to state a cause of action under the federal statute upon which the plaintiff relies. *Id.* (citing *Bell, supra*).

Further, both the Supreme Court and the Fifth Circuit Court of Appeal have treated the same arguments as raised in Defendants' motion to dismiss as a question of whether the plaintiff has stated a cause of action under RICO or whether the plaintiff has standing to bring his civil claims under RICO. *See Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000); *Khurana v. Innovative Health Care Systems,* 130 F.3d 143 (5th Cir.1997), *vacated sub nom Teel v. Khurana,* 525 U.S. 979, 119 S.Ct. 442, 142 L.Ed.2d 397 (1998).

■ Because Plaintiff has clearly attempted to state a civil claim under RICO and the claims do not appear to be clearly immaterial, frivolous, or wholly insubstantial, the Court will treat Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.

## B. RICO and Wrongful Termination Claims

■ RICO creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). In order to establish standing under § 1964(c), a plaintiff must show (1) a violation of § 1962, (2) an injury to his business or property, and (3) that his injury was directly caused by a RICO violation. *Holmes v. Securities In-*

*vestor Protection Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Cullom v. Hibernia National Bank,* 859 F.2d 1211, 1214 (5th Cir.1988). The plaintiff in this case alleges that he was injured by the defendants' violation of subsections (c) and (d) of § 1962.[1]

In *Cullom,* the Fifth Circuit discussed whether a plaintiff, who alleges he was wrongfully discharged because he refused to participate in a RICO violation, has standing to bring a claim under § 1964(c). In that case, a bank president sued his former employer for violating § 1962(c) through engaging in mail and securities fraud, alleging he was asked to resign from his position because he refused to participate and cooperate in the bank's fraudulent scheme. The plaintiff argued that he had stated a cause of action under RICO, by claiming that he was wrongfully discharged for refusing to participate in an activity which is violative of RICO. *Cullom,* 859 F.2d at 1214. The Fifth Circuit Court of Appeal disagreed, finding that such a person does not have standing to sue under RICO for his discharge. *Id.*

In making its determination, the Court first discussed the proximate causation requirement imposed on the plaintiff under § 1964(c). The Court explained that a person has standing to sue under § 1964(c) only if the alleged racketeering activities forbidden by RICO injure the person in his business or property. *Cullom,* 859 F.2d at 1215 (citing *Sedima v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). The compensable injury must necessarily flow from the commission of predicate acts that constitute the RICO

---

1. Subsection (c) and (d) provide:

   (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

   (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

violation. *Id.* Thus, the Court concluded that the plaintiff in *Cullom* did not have standing to bring a RICO claim, because he did not allege that he was injured by the predicate acts-securities fraud and mail fraud. *Id.* at 1216. Rather, he was injured by the defendants' act of discharging him. "[B]eing discharged for either reporting a RICO violation or refusing to participate in a RICO violation does not flow from predicate acts; thus, both fail to meet the causal nexus required under the statutory language of § 1964(c) and *Sedima.*" *Id.* at 1217. A wrongful discharge in and of itself does not constitute a RICO violation and is, therefore, not actionable under RICO. *Id.*

Subsequent to the *Cullom* decision, the Supreme Court also discussed the proximate causation requirement for a claim under § 1964(c), specifying that to maintain a RICO suit, a plaintiff must have been *directly* injured by the actions which violate RICO. *See Holmes,* 503 U.S. at 274, 112 S.Ct. at 1321. In *Holmes,* the Court held that an alleged stock manipulation scheme that prohibited two broker-dealers from meeting obligations to customers did not proximately cause the injury claimed by a corporation subrogated to the rights of the broker-dealers' non-purchasing customers. The Court reasoned that the plaintiffs were injured only indirectly by the racketeering activity and, therefore, did not have standing to bring a RICO claim. *Id.* The Court explained that the proximate causation requirement is intended to preclude recovery by plaintiffs who complain of injuries resulting from "the misfortunes visited upon a third person" by a defendant's unlawful acts under RICO. *Id.* at 268, 112 S.Ct. at 1317–18.

The Fifth Circuit again addressed the question of standing to bring a RICO claim in relation to an alleged wrongful discharge from employment in *Khurana.* The plaintiff in *Khurana* was a physician who became the medical director of a group that was allegedly engaged in fraudulent Medicaid and Medicare billing practices. After his promotion to medical director, the plaintiff became aware of the fraudulent practices. He was discharged from his position six months later. *Khurana,* 130 F.3d at 146. The plaintiff sued, alleging that the defendants committed a variety of RICO predicate acts, including wire and mail fraud, extortion, bribery, and witness tampering. He contended that he was fraudulently induced into "harmful employment associations," which caused him a loss of legitimate business opportunity and damage to his professional reputation. He further claimed that he was wrongfully discharged, causing him a loss in earnings, benefits, and reputation, and that the defendants had illegally competed with in his private practice, causing him a loss of business income. *Id.* at 146–47.

Relying on *Cullom* and *Holmes,* the Court concluded that the plaintiff's discharge and illegal competition claims were too remote to satisfy proximate causation under § 1964(c). *Khurana,* 130 F.3d at 149–50. However, as to the plaintiff's assertion that the defendants caused him injury by fraudulently inducing him to accept employment via mail and wire fraud, thereby damaging his reputation through association with their fraudulent activities and depriving him of other legitimate business opportunities, the Court determined that the plaintiff had standing to bring those claims. *Id.* at 150–52. The Court ruled that the plaintiff's detrimental reliance on the defendants' misrepresentations as to the legitimacy of the hospital's operations in taking his position with the hospital, indicated the necessary proximate causation relationship between the injury and alleged illegal racketeering acts of mail and wire fraud. *Id.* at 150.

Finally, the Court in *Khurana* addressed the plaintiff's conspiracy-based RICO claims related to his wrongful termination and concluded that, while he did not have standing to pursue a claim for wrongful termination under § 1962(b) or (c), he may have standing to pursue a claim for termination injuries as a result of an act in furtherance of a RICO conspiracy under § 1962(d). *Khurana*, 130 F.3d at 153–54. The Court held that standing for a civil RICO claim under § 1962(d) may be premised on injury proximately caused by overt acts in furtherance of the conspiracy that are not RICO predicate acts. *Id.*

Thereafter, the Supreme Court granted certiorari in *Beck v. Prupis*, 529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000), to resolve a conflict among the Courts of Appeal on that last question answered in *Khurana*—whether a person may assert a RICO conspiracy claim for an overt act in furtherance of a RICO conspiracy that does not itself constitute racketeering activity. The Court answered in the negative, finding that to state a claim under § 1962(d), the overt act in furtherance of the conspiracy must also be independently wrongful under RICO. *Id.* at 506, 120 S.Ct. 1608. Thus, the *Beck* Court overruled the Fifth Circuit's holding in *Khurana* as to the plaintiff's conspiracy claim.

However, as Plaintiff in this case correctly points out in his Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss (Rec.Doc. 8), the Supreme Court in *Beck* did not address the portion of *Khurana* discussing proximate causation for injury to a plaintiff resulting from his detrimental reliance upon fraudulent misrepresentations as to the legitimacy of a potential employer's practices. The *Beck* Court only addressed the narrow issue of whether a RICO conspiracy claim can be predicated on overt acts that do not constitute racketeering activity and cited the *Khurana* case as one in which a court mistakenly had found that it could. Therefore, *Khurana* still offers guidance as to whether a plaintiff has stated a claim under § 1962(c), with respect to the proximate causation requirement.

## C. Plaintiff's Complaint (Rec.Doc. 1) and Case Statement of Civil RICO Claim (Rec.Doc. 4)

In the instant case, while Plaintiff has made some general allegations in his Complaint similar to the claims maintained by the Court in *Khurana*,[2] the Complaint and Case Statement of Civil RICO Claim do not sufficiently state a civil RICO claim under subsection (c) or (d) of 18 U.S.C. § 1962. Most important is that nowhere in the Complaint or RICO Statement does Plaintiff make the necessary allegation that Defendants' conduct in making fraudulent representations to him in order to induce him to accept employment with Allied constituted wire fraud, a RICO predicate act, from which his injury resulted.[3] In fact, the RICO Statement does not include wire fraud as a predicate act upon which Plaintiff's RICO claims are ground-

---

**2.** Plaintiff claims that Dr. Bordonaro fraudulently induced him to work with Allied to further Allied's unlawful practice of billing for medically unnecessary treatment, in that Dr. Bordonaro expected Dr. Alden to engage in that practice, although he did not inform Dr. Alden of that expectation until the day Dr. Alden was released from his position with Allied. Complaint, ¶ 30. Dr. Alden further claims that, as a result of his being fraudulently induced to associate with Allied, for about a year he had difficulty finding comparable work and received considerably less compensation. *Id.* at ¶ 35. He also claims that his personal and professional reputation have been damaged by the defendants' conduct. *Id.* at ¶ 36.

**3.** Plaintiff only makes this necessary assertion in Plaintiff's Memorandum In Opposition to Defendants' Motion to Dismiss (Rec.Doc. 6).

ed. (Rec. Doc. 4, at 3). Further, in the RICO Statement, Plaintiff fails altogether to allege that he was directly injured by the defendants' fraudulent misrepresentations. Instead, the Statement only alleges that the plaintiff was injured as a result of his wrongful termination for refusing to participate in the fraudulent RICO activities, claims which clearly do not give rise to a RICO civil cause of action under *Cullom* and *Khurana.* (Rec. Doc. 4, at 5–6).

Because Plaintiff has not clearly alleged that his injuries resulted directly from a RICO predicate act, he has not sufficiently stated a civil RICO claim under § 1962(c). As discussed in *Cullom, Khurana,* and *Beck,* the Plaintiff has no cause of action under RICO for injuries resulting only from his alleged wrongful termination.

■ Regarding Plaintiff's RICO conspiracy claims, Plaintiff similarly alleges that his damages were caused by the overt acts of Allied terminating his employment and Gulf revoking the offer of employment. Because Plaintiff has not claimed that the overt act in furtherance of the RICO conspiracy was itself a RICO predicate act, under *Beck,* those claims are not actionable either. Finally, it appears that Dr. Alden's only RICO claim against Gulf, Dr. Jones, and Dr. Daly is that Gulf's revocation of the employment offer was an overt act in furtherance of the RICO conspiracy, a claim that, as discussed, cannot be maintained in light of the Supreme Court's decision in *Beck.*[4]

However, because, under *Khurana,* Plaintiff may be able to maintain claims related to the alleged fraudulent misrepresentations that induced him to accept employment with Allied, the Plaintiff is hereby given fifteen (15) days in which to amend his Complaint and RICO Statement, in order to more clearly assert his civil RICO claims. If Plaintiff fails to amend the Complaint and RICO Statement, the Court will grant Defendants' Motion and Dismiss Plaintiff's claims for the foregoing reasons.

Accordingly;

**IT IS ORDERED** that Plaintiff has *fifteen (15) days* in which to file an amended Complaint and RICO Case Statement, failing which, Defendants' Motion to Dismiss will be granted.

---

4. The Court is skeptical that Plaintiff can maintain any civil RICO claims against the Gulf Defendants. However, rather than dismiss the Gulf Defendants from the case at this time, the Court will allow for the possibility that Plaintiff can amend his Complaint and RICO Statement to state a viable federal claim against these defendants under § 1962(c) or (d).